1  WO

2

3

4

5

6  **IN THE UNITED STATES DISTRICT COURT**

7  **FOR THE DISTRICT OF ARIZONA**

8

9  Linda Westling,                           No. CV-19-0112-TUC-LCK

10                          Plaintiff,        **ORDER**

11  v.

12  Andrew Saul,

13                          Defendant.

14

15         Plaintiff Linda Westling filed this action pursuant to 42 U.S.C. § 405(g) seeking

16  judicial review of a final decision by the Commissioner of Social Security (Commissioner).

17  (Doc. 1.) Before the Court are Westling's Opening Brief, Defendant's Responsive Brief,

18  and Westling's Reply. (Docs. 16-18.) The parties have consented to Magistrate Judge

19  jurisdiction. (Doc. 13.) Based on the pleadings and the administrative record, the Court

20  remands for the award of benefits.

21                    **FACTUAL AND PROCEDURAL HISTORY**

22         Westling was born in April 1948 and was 60 years of age at the alleged onset date

23  of her disability. (Administrative Record (AR) 331.) She had past relevant work experience

24  as a secretary and receptionist. (AR 44, 69-70, 77, 365, 412.) Westling filed an application

25  for Disability Insurance Benefits (DIB) in November 2013. (AR 331.) She alleged

26  disability from August 21, 2008. (*Id.*) Westling's application was denied upon initial

27  review (AR 125-32) and on reconsideration (AR 133-44). A hearing was held on August

28  9, 2016. (AR 36-89.) The ALJ then found Westling was not disabled. (AR 149-57.) The

1  Appeals Council remanded the case because the ALJ failed to grant Westling's request for
2  a supplemental hearing. (AR 165-66.) A second hearing was held on November 30, 2017.
3  (AR 90-124.) Subsequently, the ALJ found that Westling was not disabled. (AR 29-38.)
4  The Appeals Council denied Westling's request for review of that decision. (AR 1.)

5        The ALJ found that Westling had severe impairments of moderate to severe
6  degenerative disc disease and spondylolisthesis of the lumbar spine. (AR 18.) The ALJ
7  determined Westling had the Residual Functional Capacity (RFC) to perform medium-
8  exertion work with the following limitations: stand or walk for a total of 6 hours, and sit
9  for a total of 8 hours; occasionally lift and carry up to 50 pounds, climb ladders/scaffolds,
10  and tolerate exposure to heights; frequently lift up to 20 pounds, operate foot controls,
11  balance, stoop, kneel, crouch, crawl, and tolerate environmental exposures (other than
12  heights); and continuously sit, stand, or walk for 4 hours, lift up to 10 pounds, reach, handle,
13  finger, feel, push/pull, and climb stairs/ramps. (AR 19.) The ALJ concluded at Step Four,
14  based on the testimony of a vocational expert, that Westling could perform her past relevant
15  work as a secretary and receptionist. (AR 24.)

16                              **STANDARD OF REVIEW**

17        The Commissioner employs a five-step sequential process to evaluate DIB claims.
18  20 C.F.R. § 404.1520; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To
19  establish disability the claimant bears the burden of showing she (1) is not working; (2) has
20  a severe physical or mental impairment; (3) the impairment meets or equals the
21  requirements of a listed impairment; and (4) claimant's RFC precludes her from
22  performing her past work. 20 C.F.R. § 404.1520(a)(4). At Step Five, the burden shifts to
23  the Commissioner to show that the claimant has the RFC to perform other work that exists
24  in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074
25  (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not
26  disabled" at any point in the five-step process, he does not proceed to the next step. 20
27  C.F.R. § 404.1520(a)(4).

28

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

## DISCUSSION

Westling argues the ALJ committed three errors: (1) he failed to provide clear and convincing reasons for rejecting her symptom testimony; (2) he failed to give proper weight to the opinion of her treating physician; and (3) he failed to account for her diabetic neuropathy.

### Symptom Testimony

Westling argues the ALJ failed to provide clear and convincing reasons to reject her symptom testimony. In general, "questions of credibility and resolution of conflicts in the testimony are functions solely" for the ALJ. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). However,

"[w]hile an ALJ may certainly find testimony not credible and disregard it . . . [the court] cannot affirm such a determination unless it is supported by specific findings and reasoning." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884-85 (9th Cir. 2006); *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1995) (requiring specificity to ensure a reviewing court the ALJ did not arbitrarily reject a claimant's subjective testimony); SSR 96-7p. "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

Initially, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell*, 947 F.2d at 344). The ALJ found Westling had satisfied part one of the test by proving impairments that could produce the symptoms alleged. (AR 20.) Next, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins*, 466 F.3d at 883; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (holding an ALJ can reject claimant testimony if he finds evidence of malingering). The ALJ did not make an affirmative finding of malingering. Therefore, to support his discounting of Westling's assertions regarding the severity of her symptoms, the ALJ had to provide clear and convincing, specific reasons. *See Robbins*, 466 F.3d at 883.

Westling completed a Function Report, in which she stated that she was unstable on her feet; could not stand, squat, bend, reach, kneel, or stair climb; could do very limited walking; and, experienced pain while sitting. (AR 379, 384.) During the day she would sometimes pick up her grandchildren from school, perform short household chores (sitting as needed for pain), and ice her back throughout the day. (AR 380, 382.) Westling could perform her own personal care by sitting in a shower chair and leaning on the sink to get up from the toilet. (AR 381.) She would prepare simple food, sitting as needed for pain.

(*Id.*) She went to the grocery store once or twice per month using a motorized cart. (AR 382.) She reported being unable to do any exercise; she would read and watch television. (AR 383.) She attended church a few times per month depending on her pain and, although she got along well with others, she had no social life. (AR 383-84.) She took only ibuprofen because prescription medication made her "goofy." (AR 380.) She reported pain impacted her ability to concentrate. (AR 384.) Westling was easily upset and sometimes yelled because of the intensity of her pain. (AR 385.)

At the hearing, in August 2016, Westling testified that she was unable to work because she could not walk any distance, bend, stoop, kneel, or lift, and experienced intense pain (which she identified as nerve pain). (AR 51, 60, 68.) She stated that sitting also was limited and a recliner was best, but only allowed her to sit for 30 minutes at a time. (AR 52, 60, 63.) She would stand for a short chore or walk, for 10-15 minutes, and then sit again. (AR 52, 64.) She was unable to do anything above her head, could not mop or vacuum, used a motorized cart in large stores, and held onto her husband when outside the house because she was not stable on her feet. (AR 52.) Pain limited her lifting to less than 2 gallons of milk. (AR 68.) She used a stool in the shower. (AR 68.) Her walking was limited due to low back pain radiating into her legs and foot numbness; she stumbled often. (AR 53, 68-69.) She stated that injections helped for a period of weeks to lessen the pain. (AR 53.) Pain pills upset her stomach and caused diarrhea, so she took only ibuprofen. (AR 53, 64-65.) She spent a lot of time reading or watching the History Channel. (AR 66.) At the hearing, she alternated between sitting and standing several times. (AR 71.) She experienced headaches every other day, sometimes lasting all day and requiring her to lie down. (AR 72.)

At the November 2017 hearing, Westling did not provide any additional testimony. However, the ALJ noted that she got up 4 times during the medical expert's testimony to move around. (AR 117.) He also stated, "I'm not putting the claimant's credibility in question." (AR 122.)

1       The ALJ found that Westling's testimony about her limitations was not fully

2   consistent with the medical evidence or other record evidence. (AR 20.) The ALJ went on

3   to discuss the medical evidence, however, he did not link any of the evidence to Westling's

4   testimony. (AR 20-23.) Regardless, if the objective medical evidence fully explained a

5   claimant's symptoms, then credibility would be irrelevant. Credibility factors into the

6   ALJ's decision only when the claimant's stated symptoms are not substantiated by the

7   objective medical evidence. SSR 16-3p. Thus, it is error for an ALJ to discount credibility

8   solely because a claimant's symptoms are not substantiated by the medical evidence. *Id.*;

9   *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). As this was the only basis for

10  the ALJ's rejection of Westling's symptom testimony, it was insufficient to sustain it.

11      Defendant argues that the ALJ properly discounted Westling's testimony in favor

12  of the medical opinions of Drs. Fahlberg and Schmitter. While that may be warranted in

13  particular cases, the ALJ did not identify any contradictions between Westling's testimony

14  and any doctor's opinion. No doubt there are differences between them; however, the ALJ

15  did not rely upon any such inconsistencies to discount Westling's testimony. Keeping in

16  mind the Court's obligation to defer to the ALJ's credibility determinations and resolution

17  of evidentiary conflicts, the Court has closely reviewed the ALJ's decision to identify any

18  rationale provided for his discounting of Westling's symptom testimony. There is none to

19  be found.[1] "The ALJ must specifically identify what testimony is credible and what

20  testimony undermines the claimant's complaints." *Morgan v. Comm'r of Soc. Sec. Admin.*,

21

22

---

23      [1] The parties discussed whether the ALJ could discount Westling's symptom
24  testimony because she took only over-the-counter pain medication. This is irrelevant
    because the ALJ did not rely on this as a reason to discount her testimony; he referenced it
25  only in discussing Dr. Bakotic's opinion testimony (AR 21). *See Stout v. Comm'r, Soc.
    Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (holding that courts are not allowed to
26  affirm the Commissioner's decision on a ground upon which the ALJ did not rely). Further,
    because Westling provided a reason she declined to take stronger pain medication, it made
27  her "goofy" and upset her gastro-intestinal system, it would not have been a valid basis to
    discount her pain testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155,
28  1162 (9th Cir. 2008) (finding ALJ improperly discounted pain testimony based on
    claimant's conservative treatment because claimant explained lack of pain medication was
    due to adverse side effects).

1    169 F.3d 595, 599 (9th Cir. 1999). The ALJ erred by failing to identify any basis, let alone

2    clear and convincing reasons, to reject Westling's symptom testimony.

3              **Medical Opinion of Dr. Raymond Bakotic**

4              Westling argues the ALJ erred in giving very little weight to treating physician Dr.

5    Bakotic. In August 2016, Dr. Bakotic opined that Westling had been unable to engage in

6    substantial gainful activity since April 2011. (AR 643.) Specifically, she could stand, walk,

7    sit, and stoop/bend less than one hour each before needing to rest, and frequently could lift

8    or carry only a weight below 10 pounds. (AR 643-44.) He noted that she had received

9    numerous lumbar spinal injections without permanent pain relief. (AR 644.)

10             The opinion of a treating physician is generally afforded more weight than a non-

11   examining or reviewing physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

12   1995), as amended (Apr. 9, 1996). The opinion of Dr. Bakotic was contradicted by several

13   doctors, including consulting physician Dr. Hassman, who found Westling had no

14   limitations. (AR 561.) When there are contradictory medical opinions, to reject a treating

15   physician's opinion, the ALJ must provide "specific and legitimate reasons that are

16   supported by substantial evidence." *Lester*, 81 F.3d at 830-31; *Bayliss v. Barnhart*, 427

17   F.3d 1211, 1216 (9th Cir. 2005).

18             The ALJ stated that he gave little weight to Dr. Bakotic's opinion because it was

19   inconsistent with other evidence, in particular, the opinion of Dr. Hassman. The ALJ noted

20   that Dr. Hassman's exam was normal, Westling reported to the doctor that she was taking

21   no medication, and she was in no acute distress during the exam. (AR 21.) Dr. Bakotic's

22   opinion was not based on Westling's medication or absence of it; therefore, her lack of

23   medication at the time of Dr. Hassman's examination is irrelevant to her treating doctor's

24   opinion. Similarly, one normal examination or the absence of acute distress on one day,

25   are not weighty reasons to discount Dr. Bakotic's opinion.

26             The dispositive issue is, however, that after relying upon Dr. Hassman's

27   examination as the sole reason to discount Dr. Bakotic's opinion, the ALJ gave Dr.

28   Hassman's opinion little weight. He discounted Dr. Hassman's opinion because it failed to

account for the record evidence of lumbar anterolisthesis, and degenerative changes of the lumbar spine and mild to severe lumbar canal narrowing. (AR 22.) Additionally, the ALJ noted that Dr. Hassman's opinion was inconsistent with evidence from Dr. Pimienta that Westling had degenerative disc disease, positive straight leg raise test, radiculopathy, and paresthesia. (*Id.*) It was not legitimate to discount Dr. Bakotic's opinion because it was inconsistent with Dr. Hassman's normal exam results, while contemporaneously discounting Dr. Hassman's opinion because it was inconsistent with another doctor's findings of abnormalities.

Defendant argues that Dr. Bakotic's opinion was inconsistent with the opinions of Drs. Fahlberg and Schmitter. While true, the ALJ did not rely upon any inconsistencies other than Dr. Hassman's exam. *See Stout*, 454 F.3d at 1054 (holding that courts are not allowed to affirm the Commissioner's decision on a ground upon which the ALJ did not rely). Because his reliance on Dr. Hassman's exam was not a specific, legitimate reason to discount the opinion of Dr. Bakotic, and he offered no other, the ALJ erred.

## CONCLUSION

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). When a court finds that an administrative decision is flawed, the remedy should generally be remand for "additional investigation or explanation." *INS v. Ventura*, 537 U.S. 12, 16 (2006) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004). However, a district court should credit as true medical opinions and a claimant's testimony that was improperly rejected by the ALJ and remand for benefits if:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the testimony; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004); *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (precluding remand for further proceedings if the purpose is solely to allow ALJ to revisit the medical opinion he rejected). The Ninth Circuit holds that

1    application of the credit as true rule is *mandatory* unless the record creates serious doubt

2    that the claimant is disabled. *Garrison*, 759 F.3d at 1021. The Court has concluded that the

3    first requirement has been satisfied, because the ALJ rejected Westling's symptom

4    testimony and Dr. Bakotic's opinion without legally valid reasons.

5            Second, there are no outstanding issues to be resolved. Defendant disagrees, citing

6    conflicts in the record between the opinions of various physicians. The ALJ noted these

7    opinion variances and had an opportunity to resolve them. However, his resolution was not

8    well-reasoned. The record needs no further development and Defendant does not argue

9    otherwise. If the Court were to remand for further proceedings, it would be solely for the

10   ALJ to reconsider evidence he has already reviewed and rejected on a legally insufficient

11   basis. A mulligan to re-evaluate the same evidence does not qualify as a useful purpose for

12   a remand under the credit-as-true analysis. *Id.* at 1021-22.

13           Next, the Court evaluates the outcome of the disability analysis if Dr. Bakotic's

14   opinion and Westling's symptom testimony are credited.[2] Dr. Bakotic opined that Westling

15   was unable to stay in one position for even an hour before needing to rest. (AR 643-44.)

16   Additionally, Westling testified that she could sit a maximum of thirty minutes in a reclines

17   or twenty minutes in a standard chair, which she would alternate with standing or moving

18   for 5-15 minutes. (AR 52, 63-64, 67.) The vocational expert testified that a person who

19   could only sit for 20-30-minute intervals, alternating with standing and walking for a

20   maximum of 15-minute intervals, was not employable because the frequency of position

21   changes would "interfere with production to an actual job." (AR 79.) Crediting the

22   testimony of Dr. Bakotic and Westling, the ALJ would be required to find Westling

23   disabled based on the vocational expert's testimony. *Cf. Benecke*, 379 F.3d at 595

24   ("Requiring remand for further proceedings any time the vocational expert did not answer

25   a hypothetical question addressing the precise limitations established by improperly

26

27           [2] Westling argued that she met the credit as true requirements. Although she
     discussed how she satisfies the first two criteria, she failed to set forth why the discredited
28   evidence leads to the conclusion that she is necessarily disabled. (Doc. 16 at 15-16; Doc.
     18 at 7.) She merely offered a conclusory statement that the discredited evidence required
     a finding of disability.

1    discredited testimony would contribute to waste and delay and would provide no incentive

2    to the ALJ to fulfill her obligation to develop the record.")

3         After a thorough review of the entire record, the Court does not have serious doubts

4    as to whether Westling was disabled during the relevant period.[3] Because Dr. Bakotic's

5    opinion reaches back only to April 1, 2011, the Court finds that to be the relevant onset

6    date for an award of benefits. The only record evidence dated between Westling's August

7    2008 alleged onset date and Dr. Bakotic's April 2011 disability date relates to a November

8    2008 ankle injury and surgery. Those documents fall between November 2008 and January

9    2009. (AR 455, 472-76, 480-82.) The ALJ concluded this ankle injury did not impair

10   Westling's ability to work for a continuous 12-month period (AR 18); Westling did not

11   challenge this finding. The sparse records from before the 2008 ankle surgery, up to April

12   2001, are not sufficient for a disability finding. For this reason, there is no record evidence

13   warranting remand to identify a possible onset date prior to April 2011.

14        Finally, Plaintiff filed for benefits in 2013, at the age of 65, and has been waiting

15   almost seven years. This lengthy period of time, and her age, support a remand for benefits

16   rather than requiring claimant to wait any longer. *See Vertigan v. Halter*, 260 F.3d 1044,

17   1053 (9th Cir. 2001) ("Such a remand for benefits is indicated particularly where a claimant

18   has already experienced lengthy, burdensome litigation.")

19        Accordingly, **IT IS ORDERED** that the decision of the Commissioner is

20   **REVERSED AND REMANDED** for an award of benefits beginning April 1, 2011. The

21   Clerk of Court should enter judgment and close this case.

22        Dated this 17th day of April, 2020.

23

24                                              *Lynnette C. Kimmins*
                                                Honorable Lynnette C. Kimmins
25                                              United States Magistrate Judge

26

27        [3] Because the Court finds that remand for the award of benefits is warranted based
     on Dr. Bakotic's opinion and Westling's symptom testimony, the Court does not reach her
28   third claim based on diabetic neuropathy. As Westling acknowledged, relief on this claim
     would require remand for further proceedings. (Doc. 16 at 10.)